Filed 1/6/22  P. v. Martinez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL MARTINEZ,<br><br>    Defendant and Appellant. | A159821<br><br>(Solano County Super. Ct.<br> No. FCR348129) |

A jury found defendant Samuel Martinez guilty as charged of second degree robbery, and the trial court sentenced him to five years in prison. Martinez raises claims of evidentiary, instructional, and sentencing error. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Around 7:30 p.m. on October 17, 2019, A.B. was walking by himself from his apartment to his parents' place via the Linear Trail in Fairfield.[1]  He was going to his parents' apartment to pick up some clothes and try to figure out what was wrong with his iPhone, which would not turn on.

There was no one else on the trail when two men approached him; one appeared to be Hispanic with a tattoo under his left eye, and the other man

---

[1] We refer to the person who was robbed by first initials to protect his privacy.

1

had darker skin. They both smelled of hard alcohol. At trial, A.B. identified Martinez as the man with the face tattoo and codefendant Jonathan McClure as the other assailant.[2] The men asked if he had "any weed or cigarettes on [him]," and A.B. said no. They asked if he had anything else on him, and he said no and tried to continue walking, but the men blocked his path. Martinez pushed A.B. up against a fence and "started removing items from [him]." McClure made threats; A.B. testified McClure was "talking about how he's going to kill me and how not to make any sudden moves or keep the hands where they can see them or keep my hands up." Martinez said he was on PCP and he had a knife and a gun.

A.B. testified he tried "to lower tension[s]" to "make sure no harm came to [him]" by attempting to "bargain" or "negotiate" with the men. He explained, "They asked me to give them my stuff. I started to take [my wallet] out, and I was hesitant because, at the time, I was trying to . . . bargain with them, but they ended up telling me to put my hands in the air. When I did that with the wallet in my hand, [Martinez] ripped it from my hand."

Martinez removed a debit card and ID card from the wallet and took a picture of A.B.'s ID. He took the few dollars in the wallet and then handed the wallet back to A.B. The men asked A.B. to hand over his phone. He handed his iPhone to Martinez, who put it in his pocket. Martinez next took a shopping bag from A.B.[3] The men asked where A.B. was going. When he

---

[2] McClure and Martinez were tried together. McClure's criminal case is not part of this appeal.

[3] The bag contained makeup and a necklace, which A.B. had bought online to give to his girlfriend. When the men saw the makeup, they asked if A.B. was some kind of cross dresser, and McClure grabbed A.B. by the hair and "some hair ripped out of [his] head."

2

told them the name of the apartment complex, Martinez said he was a Norteño gang member and he "had boys" in the complex who would recognize A.B. if he came around again. A.B. was "pretty scared" during the encounter.

A.B. was wearing three necklaces, and Martinez "ripped [them] off [his] neck." The men took his leather jacket and hat. When the jacket was taken, A.B. felt "fearful and nervous." The interaction ended with the men "telling [A.B.] to not come around again and how they would recognize [him]." The men threw most of the items they had taken in a ditch and walked away with the phone and dollar bills.[4] After the men left, A.B. went to the street, borrowed a passerby's phone, and called 911.

Fairfield Police Officer Chris Adams happened to be nearby and contacted A.B. while he was still on the 911 call. The officer took him to view two suspects who had been stopped at a mall about a 10-minute walk from where the robbery occurred. A.B. identified Martinez immediately. A silver iPhone was found in Martinez's front pants pocket and another phone was in his back pocket. A.B. identified the silver iPhone as his. No drugs or weapons were found on Martinez, who smelled of alcohol when he was arrested.

The defense at trial focused on casting suspicion on A.B. and urging that his account of the robbery was not plausible. Martinez's counsel argued in closing that it was not reasonable for A.B., alone on Linear Trail, to be "wearing leopard print pants, walking through a place where there are a lot of homeless people" "in the dark, the middle of the night with a cell phone

---

[4] A.B. later was able to recover most of his property. He went back to the trail with an officer about an hour after the robbery and they found his necklaces, debit card, shopping bag, and hat. A.B. went back to the trail again with his siblings and found his ID and jacket.

that doesn't work to get to their parents' house an hour away from their apartment." She suggested, "Perhaps he's familiar with [the trail] because he's been there before to purchase drugs. There's more to it, but I'm just painting the picture for you." She offered the jury "different scenarios" other than a robbery that could have happened. "Perhaps," she posited, "Mr. Martinez used trickery. He duped him. He took off with his phone, never came back with the drugs. Still can't convict Mr. Martinez. The elements are specific to force or fear to take property." She suggested a scenario in which there was "some kind of scuffle" and A.B.'s "phone fell out" of his pocket and Martinez picked it up and decided to keep it. That wouldn't be robbery, she argued, because "the intent was formed after the force or the fear." She argued A.B. fabricated the story that he was robbed and "create[d] more evidence to support his story" by damaging his own jacket and necklaces. She suggested A.B. "may have been frazzled" and on drugs: "He may have been under the influence that night. We don't know. Nobody tested him."

## DISCUSSION

A.    *Evidentiary Rulings Regarding A.B.*

Defendant contends the trial court erred in excluding evidence of A.B.'s drug use and mental health problems. This contention fails.

### 1.    Procedural History

A.B. reported "that in the weeks before the robbery he was in a 'mental hospital' for suicide attempts brought on in part by use of alcohol and pills." The prosecution filed a motion in limine to exclude evidence regarding A.B.'s recent hospitalization and suicide attempts, arguing the evidence was not relevant and should be excluded under Evidence Code section 352.

At a hearing on the motion, McClure's counsel objected to the motion, arguing the evidence was relevant to the witness's "ability to perceive and re-

4

tell issues." But he conceded there was "no proof" that A.B. was under the influence at the time of the offense. Martinez's counsel also objected, claiming the evidence was relevant to credibility because A.B. had not provided the information about his suicide attempts and drug use to the police or at the preliminary hearing. She argued it could be inferred "that he is a drug user."

The court granted the prosecution's motion to exclude the evidence of A.B.'s suicide attempts and hospitalization.

2.    Analysis

Defendant argues the evidence excluded was relevant to A.B.'s credibility and ability to perceive. We disagree.

As to evidence of alleged drug use, our high court has explained, "Evidence of a witness's drug use is inadmissible unless the testimony 'tends to show that the witness was under the influence thereof either (1) while testifying, or (2) when the facts to which he testified occurred, or (3) that his mental faculties were impaired by the use of such narcotics.' " (*People v. Panah* (2005) 35 Cal.4th 395, 478 (*Panah*).)

In *Panah*, the court held a defense question about a witness's use of drugs in the past was "properly excluded as irrelevant." (35 Cal.4th at p. 478.) We reach the same conclusion here. There was no indication A.B. was under the influence during the robbery or at trial. Evidence that only tends to  suggest "he is a drug user" (as defense counsel urged) is not relevant without further evidence about the effect of such use on his perception or memory. (See *People v. Balderas* (1985) 41 Cal.3d 144, 191–192 ["Evidence of habitual narcotics or alcohol use is not admissible to impeach perception or memory unless there is expert testimony on the probable effect of such use on those faculties"].) The defense presented no such evidence. To the extent the

5

court's evidentiary ruling encompassed a prohibition on questions regarding A.B.'s general drug use, the ruling was proper.

As to evidence of mental health issues, our high court has observed, "It is a fact of modern life that many people experience emotional problems, undergo therapy, and take medications for their conditions. 'A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem.' " (*People v. Anderson* (2001) 25 Cal.4th 543, 579.) Defendant in this case has failed to demonstrate how the witness's hospitalization and suicide attempts were relevant to the credibility of his testimony about being robbed. (Cf. *ibid.* [trial court properly excluded as irrelevant question about whether murder witness had been to therapy; appellant failed "to demonstrate the relevance of the excluded information to [the witness]'s credibility about the . . . murder"].)[5]

Thus, we conclude the trial court did not abuse its discretion in excluding evidence of A.B.'s recent suicide attempts (which may have resulted from the use of alcohol and pills) and hospitalization. (See *People v. Merriman* (2014) 60 Cal.4th 1, 74 [trial court's rulings on relevance of evidence and exclusion under Evidence Code section 352 are reviewed for abuse of discretion].) Further, because the evidentiary ruling was proper, there is no error on which to base any constitutional claims. (See *Panah, supra,* 35 Cal.4th at p. 478 ["Because the trial court's ruling was proper,

---

[5] In his reply, defendant mentions for the first time that "the court failed to permit examination of [A.B. regarding his alleged mental illness] pursuant to Evidence Code section 402." We do not consider arguments raised for the first time in a reply brief (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1005), and in any event, we see nothing in the record suggesting trial counsel asked for such a hearing and was denied one.

6

'there is thus no predicate error on which to base the constitutional claims' "].)[6]

We also note that defendant asserts defense counsel was precluded from asking police officers about whether transient persons live on Linear Trail and whether the officers made arrests on Linear Trail that involve drugs. He does not explain how this evidence could be relevant, and (despite defense counsel's conjecture) it is not readily apparent to us why it would be. Further, we discern no prejudice because testimony came in showing an officer told A.B. "a lot of transients live on the trail" and "these transients are sometimes on drugs."

B.     *Failure to Instruct on the Lesser Included Offense of Grand Theft*

1.     Procedural History

During direct examination of A.B., the prosecutor asked whether the men had "permission to take [his] property." A.B. responded, "To some extent, yeah." The prosecutor asked what he meant by that, and A.B.

---

[6] Defendant appears to claim he was denied his Sixth Amendment right to confront witnesses. The United States Supreme Court has explained the Confrontation Clause does not prevent "a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant. . . . '[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678–679.) Thus, the Confrontation Clause does not give defense counsel the right to pursue irrelevant cross-examination that would serve only to harass a witness and confuse the issues.

responded, "Well, you know, since I was threatened I, you know, they asked for my stuff, and I did hand it to them." The questioning continued:

"Q. If you hadn't been threatened, would you have given them your property?

"A. Most likely not. No.

"Q. What do you mean 'most likely not'?

"A. I probably would have tried to keep on walking. It was only because I knew they had weapons on them.

"Q. Let me put it this way: If the defendants had not asked for your property and threatened you, would you have given them your property?

"A. No.

"Q. Okay. And one question, why didn't you fight back?

"A. Well, they were under the influence of what I assume was PCP and alcohol, and on top of that, they said they had a knife and a gun. I didn't have any means to defend myself."

The prosecutor asked whether the men were attempting to purchase drugs from, or sell drugs to, A.B. He answered, "They were asking if I had any weed or cigarettes. I assume they may have originally been intending on purchasing drugs from me or at least robbing me of said drugs."

Later, during a discussion on jury instructions, Martinez's counsel requested instructions on "the lessers" of robbery. The trial court denied the request, explaining, "There's no substantial evidence that there is any lesser of larceny. All of this is predicated on fear and removal of property by fear. There is no evidence of any drug deal, exchange, theft, petty thefts at all." Martinez's counsel then said, "Well, what I heard [A.B.] testify to was that to some extent he gave permission to the suspects" to take things from him. The court responded that in that case, "there's no crime at all. It was just,

8

'Hey, take my stuff.'  So that's not a theft."  Counsel stated her request was for petty theft and "petty theft by trickery."  The court again declined to give instructions on theft.

2.    Analysis

Defendant argues the trial court erred in not instructing the jury on the lesser included offense of grand theft.  (He does not claim it was error for the trial court to deny defense counsel's request for instructions on petty theft and theft by trickery.)  We are not persuaded.

The trial court's obligation to instruct on the general principles of law relevant to the issues raised by the evidence "includes giving instructions on lesser included offenses when the evidence raises a question whether all the elements of the charged offense were present, but not when there is no evidence the offense was less than that charged."  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1085.)  However, it is not the rule that "the existence of '*any* evidence, no matter how weak' " requires instructions on a lesser included offense.  (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)  Rather, "such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury.  [Citations.]  'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed."  (*Ibid*.)

"Robbery is the taking of personal property in the possession of another, from the person or immediate presence, and against the will, accomplished by means of force or fear.  (Pen. Code, § 211.)  Where the elements of force or fear are absent, a taking from the person is grand theft, a lesser included offense of robbery."  (*People v. Jones* (1992) 2 Cal.App.4th 867,

9

869; see Pen. Code, § 487, subd. (c) [grand theft includes "[w]hen the property is taken from the person of another"].)

Here, defendant suggests A.B.'s "testimony could have formed the basis for theft of the few dollars from his wallet" if the jury disbelieved his claim of fear. But A.B. did not testify he gave his wallet to Martinez out of fear; he testified Martinez "ripped it from my hand." The only evidence about how Martinez obtained A.B.'s wallet was that he took it by force. (See *People v. Jones*, *supra*, 2 Cal.App.4th at p. 870 [noting the force required for robbery is that sufficient to overcome the victim's resistance].) A.B.'s testimony was not contradicted.[7] On this record, there was no substantial evidence showing Martinez, without using force or fear, took the wallet from A.B.'s person such that an instruction on grand theft was required. Accordingly, the trial court did not err in refusing to instruct on grand theft. (See *People v. Dorsey* (1995) 34 Cal.App.4th 694, 705–706 [trial court did not err in failing to instruct on grand theft where "[t]here was simply no factual basis for the jury to conclude that a crime was committed, but no force was used"].)

C.    *CALCRIM No. 376—Instruction on Recently Stolen Property*

The trial court instructed the jury with CALCRIM No. 376 as follows: "If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of robbery based on those facts alone. *However, if you*

---

[7] Defendant's reliance on *People v. Church* (1897) 116 Cal. 300 for his position is misplaced. There, the court recognized, "the trial court would be justified in refusing an instruction to the effect that the defendant could be convicted of grand larceny" in cases "where the evidence, *without contradiction*, indicates the offense . . . [was] accomplished by means of force or fear." (*Id.* at p. 303, italics added.)

*also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed robbery.*

*"The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of robbery.*

"Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt." (Italics added.)

Defendant contends the portion of the instruction italicized above "reduced the prosecution's burden by allowing for conviction based on slight corroborating evidence." The California Supreme Court, however, has repeatedly approved similar language in CALJIC No. 2.15 that "permits—but does not require—jurors to infer from possession of stolen property guilt of a related offense such as robbery or burglary" when there is "at least some corroborating evidence." (*People v. Gamache* (2010) 48 Cal.4th 347, 375 [citing cases upholding CALJIC No. 2.15].) And courts have repeatedly rejected constitutional challenges to CALCRIM No. 376. (E.g. *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1573, 1577 [rejecting claim CALCRIM No. 376 "violated [the defendant's] Sixth Amendment right to have each element of the charged offense proved beyond a reasonable doubt and violated his Fourteenth Amendment right to due process of law" and concluding the instruction "accurately describes the law" and "did not infringe on the appellant's constitutional rights"]; *People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1036 ["Like CALJIC No. 2.15, CALCRIM No. 376 neither undermines the presumption of innocence nor violates due process"].)

11

Defendant has not raised a new challenge or convinced us the caselaw cited is mistaken. We find no error in the trial court instructing the jury with CALCRIM No. 376.

D.    *Closing Argument*

Defendant argues the trial court erred by striking certain statements defense counsel made in her closing argument, claiming the statements were "material to the defense's theory of the case and necessary to rebut the prosecution's arguments." We reject this claim.

As we summarized above, defense counsel was permitted to argue in closing (without objection) that A.B. was not credible, that he may have been under the influence on the evening of the robbery, that he may have been familiar with the Linear Trail because he had bought drugs there in the past, that he manufactured evidence of the robbery by damaging his own jacket and necklaces, and that he may have been trying to buy drugs from Martinez and may have given his iPhone to Martinez voluntarily to exchange it for drugs.

The prosecutor, however, did object to other statements made by defense counsel:

After mentioning that A.B. testified the walk to his parents' place took an hour, defense counsel stated, "You're probably taking some stops along the way. [¶] Stops to purchase things. Stops to do things that perhaps you shouldn't be doing, which might have put him in a situation that got him on the stand here today." The prosecutor objecting on the ground "[t]here's no evidence of that," and the court sustained the objection.

Later, defense counsel said, "I'm arguing to you, and I think the evidence shows it, he brought his inoperable cell phone that never worked, that he swiped or wiped, he wiped himself because he knew he was probably

going to need to trade it to purchase drugs. That's what the bargaining was. That's what the bargaining was. [¶] It wasn't to take the property or to exchange his money for the property. The bargaining was a bargaining for the drugs, and that's why." The prosecutor objected based on "[f]acts not in evidence," and the objection was sustained. Defense counsel continued, "We heard from [A.B.] himself that he was bargaining with the defendants, that he was bargaining. And I am arguing to you that he was bargaining for drugs." Again, an objection based on facts not in evidence was sustained.

Defense counsel argued the timeline was suspect and argued this was because A.B. took time to come up with the robbery story. She said, "He waited there, came up with a story, realized he wasn't going to get what he needed back, he wasn't going to get what he needed, and then called the police to report a robbery. He got jacked. But not a robbery." The trial court sustained an objection based on facts not in evidence.

Defense counsel pointed out A.B. was able to recover all his property except the inoperable cell phone and a couple of dollars. Everything else was found nearby. Then she suggested, "Now, like I said, perhaps based on the circumstantial evidence [A.B.] was desperate for drugs. He was pulling things out of his pockets, out of his wallet, taking his clothes off in desperation to trade." At this point, the prosecutor objected and moved to strike, and the court granted the motion.

Lastly, defense counsel argued a reasonable conclusion from the evidence "is [the witness] is not telling you the truth because he just so happened to recover nearly all of his property in the area where he was allegedly robbed. He also brought with him an inoperable cell phone to the Linear Trail that supposedly had just been wiped clean because he knew he might have had to use it for drugs. That's a reasonable conclusion that points

13

to innocence." The court sustained another objection by the prosecutor and granted a motion to strike.

"Counsel has great latitude during closing argument to urge the conclusion he or she believes can be drawn from the evidence, but counsel may not argue facts not in evidence." (*People v. Harris* (2013) 57 Cal.4th 804, 852 [reviewing a sustained objection to the defense counsel's closing argument].)

Here, Martinez's counsel was granted great latitude in closing argument to suggest alternative "scenarios" different from A.B.'s version of the incident on Linear Trail. The statements the trial court struck were objectionable for "argu[ing] facts not in evidence." (*People v. Harris*, *supra*, 57 Cal.4th at p. 852.) There was no evidence that A.B. was desperate for drugs or that he purposely wiped his phone so he could exchange it for drugs. Moreover, were we to assume error, the claim would still fail because defendant has not demonstrated prejudice. The court's rulings "did not significantly hamper defendant's ability to argue what inferences should be drawn from the evidence or otherwise present a defense." (*Id.* at p. 853.) Defense counsel cross-examined A.B., attacked his credibility, and offered alternative scenarios under which no robbery occurred. The court's rulings did not violate defendant's constitutional rights to present a defense.[8]

E.   *Sentencing*

Second degree robbery is punishable by imprisonment for two, three, or five years. (Pen. Code, § 213, subd. (a)(1)(B)(2).) Defense counsel filed a

---

[8] Defendant argues that trial errors cumulatively resulted in prejudice. We have found no error. Even assuming the trial court erred in precluding officers from answering questions regarding transients on Linear Trail and drug arrests *and* erred in striking parts of trial counsel's closing argument, we find the errors harmless when considered together.

sentencing memorandum arguing for the low term. The presentence probation report recommended the high term. The report stated Martinez had a "felony extraditable warrant out of Texas."

At the sentencing hearing, the prosecutor asked for the high term, noting the offense involved threats of great bodily harm, Martinez's criminal history included numerous theft convictions, and his prior performance on probation and supervision was unsatisfactory.

Defense counsel asked for the low term and mentioned that Martinez had an extradition warrant out of Texas "that he did waive extradition on." She also referred to the evidence at trial that Martinez smelled of alcohol and was intoxicated at the time of the offense. She argued this was "another factor of mitigation" and that Martinez has an alcohol problem.

The trial court imposed the high term of five years in prison. The court found as an aggravating factor that Martinez "took a picture of [A.B.'s] ID, basically told him, I know where you live, my boys know where to find you," which was intimidating and "pretty chilling stuff." The court also found "the aggravating circumstances as outlined by probation far out[weigh] the mitigating circumstances, his prior criminal history, theft of the victim, the lack of remorse, his prison prior terms, his being on numerous grants of parole and probation." This was the basis of the court's sentencing decision, and we find no abuse of discretion.

Defendant, however, claims on appeal that the trial court abused its discretion "based on [its] mistaken belief that the minimum sentence could not be imposed due to a pending extradition request." Defendant relies on the following statement by the court: "The robbery is . . . about the intimidation . . . . [¶] . . . That's pretty chilling stuff. That kind of mitigates the whole, I don't know what I was doing, I'm intoxicated sort of thing. *It's*

15

*part and parcel of the issue, again, is he couldn't get a low term lid offer because he's getting extradited to another state.*" (Italics added.) It is not clear to us what the trial court meant by the italicized sentence. A reasonable inference is that, before trial, the prosecution had been unwilling to offer Martinez a plea deal for the low term because of his extensive criminal history in California and Texas (which included numerous theft crimes), and Martinez's history of committing theft belied defense counsel's suggestion that he only committed the current offense because he was intoxicated. But whatever the trial court was referring to, it cannot reasonably be interpreted to mean the court believed it was constrained in its sentencing choices because there was a warrant for Martinez in Texas. We, therefore, reject Martinez's claim of sentencing error. Because there was no sentencing error, Martinez's claim of ineffective assistance of counsel premised on failure to object also necessarily fails.

## DISPOSITION

The judgment is affirmed.

                                     _____
                                     Miller, J.


WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A159821, *People v. Martinez*


17