Filed 6/24/13  P. v. Jennings CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061872 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD229068 Super. Ct. No. SCD236226) |
| THOMAS DEAN JENNINGS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney and Jeffrey F. Fraser, Judges.  Affirmed as modified and remanded with directions.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Quisteen S. Shum, Deputy Attorneys General.

INTRODUCTION

This appeal by Thomas Dean Jennings,[1] who previously was convicted in 2002 of four counts of residential burglary that qualified as strikes[2] under the Three Strikes law, involves two new criminal cases (SCD229068 & SCD236226) and seven new felonies he committed in 2010 during four more residential burglaries.

*SCD229068*

On September 7, 2011, in SCD229068, a jury found Jennings guilty of one count of burglary of an inhabited dwelling (Pen. Code, §§ 459 & 460; undesignated statutory references will be to the Penal Code unless otherwise specified).  On that same date, in a bifurcated proceeding in that case, Jennings admitted (1) a first prison prior conviction allegation (§§ 667.5, subd. (b) & 668) alleging he had served a prison term based on his four 2002 prior residential burglary offenses; (2) a first serious felony prior conviction allegation based on those four offenses (§§ 667, subd. (a)(1), 668 & 1192.7, subd. (c)); and (3) an allegation that those four offenses were prior strike convictions within the meaning of the Three Strikes law (§ 667, subds. (b)- (i), 668 & 1170.12).

*SCD236226*

On February 29, 2012, in SCD236226, a jury found Jennings guilty of three counts of burglary of an inhabited dwelling house (counts 1, 4 & 6:  §§ 459 & 460), one count of

---

[1]    Our decision as to Jennings's related and pending petition for a writ of habeas corpus, which we briefly discuss, *post*, is set forth in a separate order.

[2]    "We use the term 'strike' to describe a prior felony conviction that qualifies a defendant for the increased punishment specified in the Three Strikes law."  (*People v. Fuhrman* (1997) 16 Cal.4th 930, 932, fn. 2.)

unlawful taking of a vehicle (count 2:  Veh. Code, § 10851, subd. (a)), and three counts of grand theft of personal property (counts 3, 5 & 7:  §§ 484, subd. (a), 487, subd. (a) & 488).  On that same date, Jennings admitted a first prison prior conviction allegation (§§ 667.5, subd. (b) & 668) and an allegation that his four 2002 residential burglary offenses were prior strike convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 668 & 1170.12).

*Sentencing* (*Both Cases*)

At the combined sentencing hearing in both cases, held on April 13, 2012, the court denied Jennings's *Romero*[3] motion to strike three of his four prior strikes, and sentenced him to an aggregate prison term of 100 years to life plus five years.

Specifically, in SCD236226, the court sentenced Jennings to consecutive 25-year-to-life terms for each of the three residential burglary convictions, plus concurrent 25-year-to-life terms for each of the grand theft convictions and for the taking of a vehicle conviction, and struck the prison prior allegation.  In SCD229068, the court sentenced Jennings to 25 years to life—consecutive to the sentence imposed in SCD236226—for his residential burglary conviction, plus a consecutive five-year term for the true finding on the serious felony prior conviction allegation, and struck the prison prior allegation.

*Contentions on Appeal*

In his appeal, Jennings raises three contentions.  First, he contends his trial counsel provided constitutionally ineffective assistance by (1) failing at the sentencing hearing to

---

3       *People v.  Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

discuss *People v. Garcia* (1999) 20 Cal.4th 490 (*Garcia*) and argue that three of his four 2002 prior strike convictions should be stricken because they arose out of a single period of aberrant conduct and (2) failing to provide the court at sentencing with a reporter's transcript of the 2002 hearing at which he was sentenced for those prior strike convictions because the transcript would have shown that the court at that prior sentencing hearing found, as a mitigating factor, that he committed the four underlying residential burglaries during a single period of aberrant conduct

Second, Jennings claims the court erred by not staying under section 654 the execution of the sentences it imposed in case No. SCD236226 for the three grand theft convictions and for the conviction of unlawfully taking or driving of a vehicle.

Last, he contends the court violated his Sixth Amendment right to have each element of the charged offenses proven beyond a reasonable doubt, as well as his Fourteenth Amendment right to due process, when it instructed the jury in SCD236226 with CALCRIM No. 376 regarding the possession of recently stolen property as evidence of a crime.

We modify the judgment to stay the execution of the sentences the court imposed in SCD236226 for Jennings's three grand theft convictions and his conviction of unlawfully taking a vehicle. In all other respects, we affirm the judgment and remand the matter with directions.

4

FACTUAL BACKGROUND

A. *SCD229068*

At around 1:20 a.m. on August 9, 2010, someone called San Diego Police Detective Blaine Ferguson on his cell phone and informed the detective he believed a burglary would occur at 457 7th Avenue in Imperial Beach sometime later that day. The caller told Detective Ferguson the nickname of the individual who was going to commit the burglary.

Later that morning, Detective Ferguson contacted an investigative detective assigned to the Imperial Beach area and learned that the detective did not have enough staff to conduct surveillance. With several other officers and the air support unit of the San Diego Police Department, Detective Ferguson set up surveillance along 7th Avenue.

Shortly·afterwards, the police spotted a green car with heavily oxidized paint driving slowly through the neighborhood. The car drove past the house at 457 7th Avenue, stopped at an adjacent intersection, and let a passenger out of the car. The passenger walked back to the house and entered it. Meanwhile, the car with its two remaining occupants drove off and parked a few blocks away.

After a period of time, the green car returned to the house that was being burglarized. The two people who had been in the car and the person who had entered the house loaded items taken from the house in the car. The three suspects left the house in the green car and drove northbound on Silver Strand Way. The police followed the green car in unmarked vehicles until they could initiate a traffic stop.

5

When the police in their marked vehicles activated their overhead lights and sirens and tried to stop the green car, the green car made a U-turn and drove southbound on Silver Strand Way. The green car eventually crashed into traffic at an intersection near the naval amphibious base. The rear-seat passenger, later identified as Jennings, jumped out of the green car and ran. Detective Ferguson got out of his car and chased Jennings. Jennings tried to climb over the security fence of the naval base, but he became entangled on the barbed stanchions at the top of the fence. As he was hanging upside down on the naval base side of the fence, he removed his pants and fell to the ground. Wearing only his shirt and underwear, he got up and ran through the base. Jennings's pants, which contained his wallet and evidence of his identity, were later recovered.

Jennings eventually hid inside a warehouse on the base. The police evacuated military personnel out of the warehouse, went inside, and arrested him.

Ryan Traver, who lived in the house at 457 7th Street, identified the property found in the green car as his. The property included a flat screen television, DVD's, tools, a backpack filled with pennies, an underwater camera, and watches. Traver did not know Jennings or the other suspects, and he did not give them permission to enter his home or take his belongings.

B. *SCD236226*

*6467 Bluefield Place, San Diego*

Stuart Williams lived with his mother, Joy Winter, in a house at 6467 Bluefield Place in San Diego. On June 25, 2010, Williams left the house at about 11:00 a.m. He was the last person to leave the house.

6

When Williams returned home after 1:00 p.m. that day, everything inside the house was in total disarray. Plants were knocked over, papers were scattered everywhere, drawers had been pulled out and emptied, and the bathroom cupboard also had been emptied. Winter's Audi station wagon that had been parked in the garage was missing, as were the duplicate car keys for the Audi and Winter's Jaguar, a television, and several hundred dollars' worth of stamps. Inside his bedroom, Williams noticed that a computer, a laptop, and his passport were missing, and papers had been sifted through. He called his mother and the police.

Winter, who was preparing for a trip to Africa, noticed that her identification, credit cards, current passport, six expired passports, and a visa were gone. Her jewelry and $300 in cash also were missing.

Winter and Williams did not know Jennings and did not give anyone permission to take the Audi or any of their other belongings from their home.

That night the police located the Audi near the 6000 block of Federal Boulevard. When Winter saw her car the next day, she noticed that the roof on the back had been torn apart and a tire had been removed.

John Barker, Winter's neighbor, was working in his front yard around 11:00 a.m. on June 25, 2010, when two young White males approached him and handed him a flier for landscape services. They continued walking in the direction of Winter's house. Barker described one of the males as being in his early 20's, of medium height, slender, and having a pointed nose and chin.

At trial, Barker indicated he was not sure he would recognize the individual who gave him the flyer if he saw him again, but he noted that Jennings had a "rather pointed nose" and there was a similarity between Jennings and that individual.

*6512 Sunny Brae, San Diego*

On July 28, 2010, at around 4:54 p.m., the police responded to a call regarding a burglary at 6512 Sunny Brae in San Diego. The call was made by a neighbor. The residents, John Bentz and Alicia Lopez, were not home, but the garage door and the door providing access from the garage into the house were open. The police noticed the deadbolt lock of the access door was still in the socket, but the door frame around it was torn apart. The police found a hammer, screwdriver, and broken file on the ground next to that access door, as well as a gardening glove and pocket knife outside a side door to the garage, which had a broken pet access door. It appeared that the burglar had kicked in the pet access door because its frame was inside the garage. The police also found some window screens had been removed, but they were not able to find any fingerprints on the hammer, the screwdriver, a pair of knife clippers, or the windows where the screens had been removed.

The police noticed the interior of the house was heavily ransacked. Drawers were pulled out and emptied and items were strewn all over the house.

*6228 Camino Largo, San Diego*

On August 3, 2010, Brian Elsner and his daughter lived in the house located at 6228 Camino Largo in San Diego. At around 10:00. a.m., they left the house on a road trip to the east coast.

8

Two day later, on August 5, Elsner received a phone call from Rod McCain, who was doing repairs on Elsner's home. McCain told Elsner that someone had burglarized the house. When Elsner returned home the following week, he found his house in total disarray. Cupboards, drawers, and cabinets were open, and their contents were left on the floor. Among the missing items were a desktop computer, a wedding band, two televisions, a man's watch, a stamp collection from 1955, the title to his Jaguar car, his passport, his birth certificate, an extra car key for the Jaguar, bottles of cologne and aftershave lotions, vitamins and nutritional supplements, a spice rack, a block knife set, checkbooks, check registers, and some stock certificates.

Elsner did not know Jennings, and he did not give anyone other than the construction workers and his daughter permission to be in his house on August 3, 2010.

*Police Investigation*

On August 9, 2010, the police searched the apartment where Tammy Huynh and her boyfriend, Ernest Colmenero, lived. Colmenero and Jennings were friends. The police found numerous items that Huynh admitted did not belong to her. At trial, Huynh testified that Jennings and Colmenero brought those items to her apartment in two large plastic bins the day before.[4] She also testified that Jennings carried a flat-screen television into the apartment. She told the police that Colmenero asked her to keep the items in their apartment because Jennings was going to be staying with them for a couple of days.

---

[4]    The prosecution gave Huynh use and derivative use immunity.

9

The items in the two plastic bins included power cords, car stereo equipment, paperwork and stock certificates in other people's names, a pearl necklace and other jewelry, a spice rack, a block knife set, Jennings's mail, men's clothing, a laptop, and a blue bag with "Tommy J." handwritten on it with a black marker. Huynh testified that Jennings gave Colmenero the necklace, and Colmenero then gave it to her.

On August 17, 2010, Bentz and Lopez went to the police station and identified various items that had been stolen from their house on July 28, 2010, and had been found in Huynh's apartment. Elsner identified 15 items that had been stolen from his house earlier that month and found in Huynh's apartment.

In November 2010 the San Diego Police Department Crime Laboratory concluded that Jennings's DNA matched both DNA from a swab of the upper arc of the steering wheel of Winter's Audi and the predominant DNA from a swab of the lower arc of the same steering wheel. The Crime Laboratory also concluded that Jennings was a possible contributor of DNA on a hammer found at Bentz and Lopez's house. However, following a change in DNA interpretation guidelines implemented in April 2011 to make the DNA determinations more conservative, the crime laboratory concluded that the results from the swab of the hammer were unsuitable for comparison.

DISCUSSION

I. *INEFFECTIVE ASSISTANCE OF COUNSEL*

Citing *Garcia*, *supra*, 20 Cal.4th 490, Jennings first contends his trial counsel rendered ineffective assistance by failing to argue in support of Jennings's *Romero* motion during sentencing that three of Jennings's four 2002 prior strike convictions

10

should be stricken because the residential burglaries underlying those strike convictions "occurred during a single period of aberrant conduct." Again relying on *Garcia*, Jennings also contends his counsel rendered ineffective assistance by failing to produce a reporter's transcript of the 2002 hearing at which he was sentenced for those prior strike convictions. The reporter's transcript of that 2002 hearing, Jennings asserts, would have shown that the judge in sentencing him found that, as a mitigating factor, the underlying residential burglaries "all . . . took place in one day."[5]

For reasons we shall explain, we conclude Jennings has failed to establish a claim of ineffective assistance of counsel because he has not demonstrated his trial counsel's performance fell below an objective standard of reasonableness.

A. *Background*

1. *Jennings's two sentencing memoranda* (*SCD229068 & SCD236226*)

a. *SCD229068*

On October 6, 2011, Jennings's defense counsel, David Berman, filed a sentencing memorandum in SCD229068 on Jennings's behalf. The sentencing memorandum indicated that it also pertained to the sentencing in a prior case— SCD218955—in which

_____

[5]     Jennings presents the same ineffective assistance of counsel claim in his pending petition for writ of habeas corpus (petition) filed with this court on November 15, 2012 (D062961). In support of his petition, Jennings has attached thereto a declaration by his former trial counsel (David Berman) explaining (among other things) why he did not order a reporter's transcript of Jennings's October 8, 2002 sentencing hearing. Jennings has also attached to his petition a copy of the reporter's transcript of that 2002 sentencing hearing. By order dated December 4, 2012, this court directed that Jennings's petition be considered at the same time as his pending appeal in this matter.

11

Jennings's probation was revoked following the preliminary hearing in SCD229068 and that sentencing in both cases was scheduled for October 11, 2011.

In the memorandum, Jennings's counsel pointed out that the four residential burglaries and the conspiracy underlying the prior convictions allegations admitted by Jennings in the current case (SCD229068) arose from a single prior case (SCD168375). Specifically, Berman noted that Jennings pleaded guilty and was sentenced to those underlying offenses in SCD168375 on July 17, 2002. Counsel also noted that Jennings had no criminal record and was only 21 years old when he committed those offenses in 2002. Berman added, "Now [Jennings] faces the very grim prospect of a *life sentence* because of the youthful folly of a one-day burglary spree, followed by a dubious judicial resolution, followed by a bizarre current offense."

Relying on *Romero*, *supra*, 13 Cal.4th 997, defense counsel argued in the memorandum that the court should exercise its discretion under section 1385 to strike three of Jennings's four prior strike conviction allegations because a life sentence would not be "in the 'spirit'" of the Three Strikes law. Berman also cited *Garcia*, *supra*, 20 Cal.4th 490, as additional authority in support of his argument.

In the memorandum, defense counsel submitted that, if the court were to exercise its discretion and strike three of Jennings's prior strike allegations, Jennings would "not ask[] for *any* other consideration" and would be prepared to accept a sentence of up to six years for the current burglary conviction, four years "on the prison prior," five years "on the 'nickel' prior(s)," and "a double base term on the [remaining prior] strike." Counsel

12

noted that Jennings was facing an additional consecutive prison term in the probation revocation case (SCD218955).

Defense counsel also noted that a new criminal case— SCD236226—was filed against Jennings during the trial in the current case (SCD229068), and Jennings was charged in that new case with seven felonies allegedly committed between June 25 and August 3, 2010, before the commission of the burglary charged in the current case. Counsel indicated that even if the court struck three of Jennings's prior strike allegations in the current case (SCD229068), Jennings would still be facing a Three Strikes sentence if SCD236226 resulted in a felony conviction.

In support of his argument that the court should strike three of the four prior strike allegations, Berman noted that (1) Jennings had participated in, and often led, Bible study sessions with other inmates in jail; (2) persons from the community would vouch for his good qualities at the sentencing hearing; (3) Jennings's parents were addicted to crystal methamphetamine; (4) Jennings became an addict himself; (5) he committed theft to support his addiction; and (6) he was only 30 years of age. Berman added that, even if the trial court dismissed three of Jennings's prior strike allegations, Jennings would still be in prison until well into his 50's,which Berman asserted was "a long time to spend in prison over the mistakes of two very bad days, at ages 21 and 29."

Berman attached to the sentencing memorandum copies of (1) the reporter's transcript of the July 17, 2002 change of plea hearing at which Jennings pleaded guilty to the charged offenses underlying his prior strikes; and (2) Jennings's certificates of completion and recognition for his participation in the Bible study sessions in jail.

b. *SCD236226*

On April 12, 2012, defense counsel Berman filed a sentencing memorandum in SCD236226 on Jennings's behalf, noting that sentencing in that case was scheduled for April 13, 2012; sentencing in SCD229068 had been scheduled in another courtroom for March 9 of that year, and both "cases were ordered set together for sentencing" in the same courtroom.

Anticipating that the court would read and consider the sentencing memorandum filed in case No. SCD229068 (discussed, *ante*) in preparation for the April 13, 2012 sentencing hearing, Berman incorporated by reference the arguments he had made in the sentencing memorandum filed in SCD229068. In the sentencing memorandum in SCD236226, Berman argued the reasons for striking three of the four prior strike allegations in SCD229068 also applied in SCD236226. The striking of three of the prior strike allegations, he asserted, "would still impose a gargantuan sentence on [Jennings], yet allow him the faint hope and goal of returning to the community some day, as an old man, with a chance to redeem himself." Berman added that "it would also provide a means for [Jennings] to try to make meaningful restitution to the several victims of his crimes." Berman concluded by stating that Jennings was "plead[ing] for a measure of leniency by striking all but one of the 'strike' priors in this case also."

2. *The prosecution's statement in aggravation*

In his statement in aggravation, which discussed all three cases (SCD236226, SCD229068 & SCD168375), the prosecutor argued that the circumstances in aggravation outweighed the circumstances in mitigation and asked that the court sentence Jennings to

14

a total prison term of 100 years to life plus five years.  Specifically, the prosecutor argued that (1) the manner in which Jennings committed all of his new crimes indicated planning, sophistication, or professionalism in that he committed the crimes after the victims left their homes, and each house was "ransacked in a 'professional' manner"; (2) the crimes involved an attempted taking or actual taking or damage of great monetary value; (3) Jennings's prior convictions as an adult were numerous or of increasing seriousness, as shown by the fact that, after he was convicted of four residential burglaries in 2002, he was granted parole in 2004 but "ha[d] failed to remain law abiding," he was convicted in 2005 of driving under the influence, and in 2009 he was convicted (in SCD168375) of felony possession of a controlled substance but was granted diversion; (4) he had served a four-year prior prison term for his prior residential burglary convictions; (5) he was on parole for his prior residential burglaries and on probation for his possession of a controlled substance when he committed his new offenses; and his prior performance on probation and parole was poor.

The prosecution opposed Jennings's *Romero* motion, asserting "[i]t is clear from [Jennings's] prior criminal record and multiple failures on probation and parole . . . that he is exactly the type of criminal the [Three Strikes] sentencing scheme set out to punish. There is nothing about his personal history that suggests he will become law abiding.  He has become entrenched in a pattern of criminal conduct that has victimized at least 10 different people."

15

3. *Sentencing hearing*

On April l3, 2012, the court sentenced Jennings in both cases at issue here. At the beginning of the hearing, the court noted it had received the probation reports, the statements in mitigation and aggravation, and various letters.

Defense counsel Berman, stating he did not have "a lot" to add to the sentencing memoranda he filed in these two cases, summarized the arguments he made in those memoranda:

> "[M]y client faces life sentences on these cases because of *his foolhardy behavior when he was a very young age, 21. He picked up four strikes in one case* then. [¶] It just seems a tragedy that now some 10 years later he's facing multiple life sentences because of that and because of his subsequent behavior[,] of course. We plead for mercy from the court for consideration of *his still young age*. Beyond that, I don't know what to add." (Italics added.)

In the exercise of discretion, the court declined to strike Jennings's prior strike convictions for sentencing purposes. In denying the defense's *Romero* motion to strike three of the four prior strike allegations, the court stated:

> "Well, standing before this court is an individual who has been convicted on two different jury trials of four residential burglaries. He has prior residential burglaries. He has been to prison. He started his criminal career at age 13 with a robbery which is depicted on page 5 [of the Probation Officer's Report in SCD236226].
>
> "And he made a decision early in his life that he wanted to be a criminal. And he has no regard at all for other people, or other people's property. He is the type of individual who when they wrote the Three-Strikes law . . . were thinking about somebody like him.
>
> "I have thought about exercising my *Romero* discretion. What *Romero* requires me to do is look at the nature and circumstances of the current crime, the nature and circumstances of prior crimes, strikes, and his chances of rehabilitation.

16

"So if we just take a very brief view of the current cases, not only does he break into people's houses, steal their property, but the utter disrespect of just ransacking the houses, and the horror that the victims must feel when they come home, not just to find that their property is gone, but that somebody else has come in and completely destroyed, not just their property, but their sense of well-being; their safety. A home is supposed to be the one place where all people can come in and feel safe. He has utterly shattered that in these particular cases.

"I look at the nature and circumstances of his prior strikes. Again, the same scenario plays out as in our current cases. He can't change. He won't change. He has no interest in changing. *His chances of rehabilitation are zero*. He is a career criminal. He is somebody that in order to protect the community, he must be locked up in prison for the rest of his life. That's what is going to happen today." (Italics added.)

As already noted, the court sentenced Jennings to an aggregate prison term of 100 years to life plus five years.

B. *Applicable Legal Principles*

1. *Ineffective assistance of counsel*

A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685; *People v. Pope* (1979) 23 Cal.3d 412, 422, disapproved on another ground by *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

To show denial of the right to effective assistance of counsel, a defendant must show (1) his counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland v. Washington, supra,* 466 U.S. at pp. 687, 691-692; *People v.*

*Ledesma* (1987) 43 Cal.3d 171, 216-217; *People v. Pope, supra*, 23 Cal.3d at p. 425.) To show prejudice, a defendant must show a reasonable probability that he would have received a more favorable result had his counsel's performance not been deficient. (*Strickland*, at pp. 693-694; *Ledesma*, at pp. 217-218.)

2. *Romero*

In *Romero*, *supra*, 13 Cal.4th at pages 529-530, the California Supreme Court held that section 1385, subdivision (a) (hereafter § 1385(a))[6] permits a court acting on its own motion and "in furtherance of justice" to strike prior felony conviction allegations in cases brought under the Three Strikes law. Although the Legislature has not defined the phrase "in furtherance of justice" contained in section 1385(a), the California Supreme Court has held that this language requires a court to consider both the " ' "constitutional rights of the defendant, and the interests of society represented by the People" ' " (italics omitted) in determining whether to strike a prior felony conviction allegation. (*Romero*, *supra*, 13 Cal.4th at p. 530.)

In *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*), the California Supreme Court explained that, in determining whether to strike or vacate a prior strike allegation or finding under the Three Strikes law "in furtherance of justice" pursuant to section 1385(a), the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions,

---

6    Section 1385(a) provides in part that a trial court "may, either of [its] own motion or upon the application of the prosecuting attorney, and *in furtherance of justice*, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes." (Italics added.)

18

and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."

In *People v. Carmony* (2004) 33 Cal.4th 367, 371, our high state court held a trial court's decision not to dismiss a prior strike conviction allegation under section 1385(a) is reviewed under the deferential abuse of discretion standard. *Carmony* explained that "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377.)

C. *Analysis*

Jennings principally relies on *Garcia*, *supra*, 20 Cal.4th 490, in claiming his trial counsel provided prejudicial ineffective assistance by failing at the April 2012 sentencing hearing to discuss *Garcia* and to argue that three of his four 2002 prior strike convictions should be stricken under *Romero*, *supra*, 13 Cal.4th 497 because those prior convictions arose out of a single period of aberrant conduct. He asserts the Supreme Court in *Garcia* held that, if a defendant's prior strike convictions were the product of a single period of aberrant conduct, "this [is] sufficient justification for striking [the] prior strikes." We reject Jennings's interpretation of *Garcia* and his claim that his counsel provided ineffective assistance.

*Garcia* does not hold, as Jennings suggests, that a trial court must dismiss prior strike allegations against a defendant under *Romero* when the underlying felony offenses were committed during a single period of aberrant conduct. In *Garcia*, the Supreme

19

Court noted that the issue presented was "whether a trial court, when applying the [Three Strikes law,] may exercise its discretion under section 1385[(a)] so as to dismiss a prior conviction allegation with respect to one count but not another." (*Garcia*, *supra*, 20 Cal.4th at pp. 492-493.) The *Garcia* court held that "a court may exercise its discretion in this way and that the trial court did not abuse its discretion in doing so here." (*Id*. at p. 493.) The defendant was convicted in that case of two counts of residential burglary, and the court found true an allegation that he had five prior serious felony convictions that qualified as strikes for purposes of the Three Strikes law. (*Ibid*.) Those five strikes "were for five burglaries [citation] that took place on separate occasions during a short crime spree." (*Ibid*.) The trial court imposed a sentence of 30 years to life under the Three Strikes law for the first current burglary count; but, in the exercise of its discretion under *Romero*, it dismissed all five prior strike allegations as to the second count, which resulted in a consecutive term of one year four months for that count. (*Id*. at p. 495.) On appeal, the Attorney General claimed the trial court abused its discretion by deciding to strike the prior conviction allegations as to that second count. (*Ibid*.) After considering the various factors discussed in *Williams*, *supra*, 17 Cal.4th 148, the *Garcia* court rejected the Attorney General's claim, stating it "[could not] say" that the trial court's decision to strike the prior strike allegations as to the second burglary count fell outside the bounds of reason. (*Garcia*, at p. 503.) The *Garcia* court concluded the trial court "acted within the limits of its section 1385 discretion," noting that the defendant's aggregate prison term of 31 years four months was "not lenient," the defendant cooperated with police, his prior convictions "all arose from a single period of aberrant

20

behavior," his crimes were related to drug addiction, and his criminal history did not include any actual violence.  (*Garcia*, at p. 503.)  While the *Garcia* court concluded the trial court had acted within its discretion, it did *not* hold the trial court would have abused its discretion by *denying* the defendant's *Romero* motion to dismiss the prior strike allegations.

Here, Jennings's trial counsel cited *Garcia* in his sentencing memorandum in SCD229068 only in support of his general argument that the court, in sentencing Jennings, should exercise its discretion under section 1385 by striking three of the four prior strike allegations.

However, as the Attorney General correctly points out, defense counsel in effect *did* argue that those prior strike allegations should be dismissed under *Romero* because Jennings committed the underlying 2002 prior felony offenses during a single period of aberrant behavior (see *Garcia*, *supra*, 20 Cal.4th at p. 503).  Specifically, the record shows that in his sentencing memorandum in SCD229068, which the court considered when it sentenced Jennings in this matter, defense counsel argued in support of Jennings's *Romero* motion that Jennings "was only 21 years old" and had no prior criminal record when he committed the underlying prior strike offenses in 2002.  Counsel also argued in that memorandum that Jennings "faces the very grim prospect of a *life sentence* because of the *youthful folly of a one-day burglary spree*, followed by a dubious judicial resolution, followed by a bizarre current offense."  (Second italics added.)  Defense counsel incorporated these arguments into his sentencing memorandum in SCD236226, which the court also considered.

21

Also, during the April 2012 sentencing hearing, Jennings's counsel essentially repeated these arguments, stating that, "my client faces life sentences on these cases because of his *foolhardy behavior when he was a very young age, 21.  He picked up *four strikes in one case* then." (Italics added.)  Counsel also stated, "We plead for mercy from the court for consideration of *his still young age*." (Italics added.)

The foregoing record shows that Jennings's counsel did argue in support of Jennings's *Romero* motion the point that Jennings committed the underlying 2002 strike offenses during a single period of aberrant behavior (see *Garcia*, *supra*, 20 Cal.4th at p. 503).  The court considered this argument but, in light of the various *Williams* factors specific to Jennings and his offenses, decided to deny the *Romero* motion in the exercise of its discretion under section 1385(a). For the foregoing reasons, we conclude Jennings has failed to meet his burden of showing his trial counsel's performance fell below an objective standard of reasonableness.

We also conclude that Jennings's related claim─that his counsel rendered ineffective assistance by failing to provide the court with a copy of the reporter's transcript of the October 8, 2002 hearing at which he was sentenced in SCS168375 for those prior strike convictions─is also unavailing.  In support of this claim, Jennings asserts the reporter's transcript of that hearing would have shown that the judge in that case, in sentencing him, found as a "mitigating factor" that the underlying residential burglaries "all . . . took place in one day."  Jennings asserts that, "[b]y implication, the court found that the crimes were committed so closely in time and place as to indicate a *single period of aberrant behavior*." (Italics added.)

22

However, it is obvious that, although the court in SCS168375 could properly find by implication in 2002 that Jennings committed those four prior burglaries during what could *then* be deemed a single period of aberrant behavior, his commission of the seven new felonies of which he was convicted in the current cases—after he served time in prison as punishment for his prior offenses—shows his felonious conduct in 2002 was *not* aberrant. He is a habitual offender for purposes of the Three Strikes law.

As the record shows defense counsel did argue in support of Jennings's *Romero* motion in the current matter the point that Jennings committed the underlying 2002 strike offenses during a single period of aberrant behavior, we conclude he has failed to show his counsel violated his constitutional right to effective assistance of counsel by failing to provide the court in the current matter with a copy of the reporter's transcript of the 2002 sentencing hearing.

## II. *SECTION 654 (SCD236226)*

Jennings also contends the court erred by not staying under section 654 the execution of the sentences it imposed in SCD236226 for his three grand theft convictions and his conviction of unlawfully taking or driving of a vehicle. The Attorney General concedes the execution of the sentences imposed for Jennings's grand theft convictions should have been stayed under section 654, but claims the court properly did not stay execution of the sentence imposed for Jennings's conviction of unlawfully taking or driving of a vehicle. We conclude the execution of the concurrent sentences imposed for all four of the foregoing convictions should have been stayed under section 654.

23

A. *Background*

As noted, at the combined sentencing hearing in SCD236226 and SCD229068, the court sentenced Jennings to an aggregate prison term of 100 years to life plus five years. In the case at issue here, SCD236226, the court sentenced him to consecutive 25-year-to-life terms for his three residential burglary convictions, plus concurrent 25-year-to-life terms for his three grand theft convictions and his conviction of taking of a vehicle.

B. *Section 654*

Section 654, subdivision (a) provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Section 654 "precludes multiple punishment for a single act or omission, or an indivisible course of conduct" (*People v. Deloza* (1998) 18 Cal.4th 585, 591) and ensures the defendant's punishment will be commensurate with his or her criminal culpability (*People v. Kramer* (2002) 29 Cal.4th 720, 723). If a defendant suffers two convictions and punishment for one is barred by section 654, "that section requires the sentence for one conviction to be imposed, and the other *imposed and then stayed*." (*People v. Deloza*, at pp. 591-592, italics added.)

Whether a course of conduct is indivisible for purposes of section 654 depends on the intent and objective of the defendant, not the temporal proximity of the offenses. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) Generally, if all the criminal acts were incident to one objective, then punishment may be imposed only as to one of the offenses

24

committed. (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507; *People v. Garcia* (1995) 32 Cal.App.4th 1756, 1781.)

The question of whether a defendant harbored multiple criminal objectives is a question of fact for the trial court to decide. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) A trial court's determination that a defendant held multiple criminal objectives will be upheld on appeal if it is supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

C. *Analysis*

As the parties acknowledge, the trial record in SCD236226 shows Jennings unlawfully entered and ransacked three homes, stole money and various items of personal property, and took Winter's Audi. (AOB 8-10 & 27; RB 24; see 9RT 661:12-15, 665:15 & 671:7-22)! As substantial evidence shows the grand thefts were target crimes Jennings intended to commit when he entered the homes and he harbored the same criminal objective in committing the burglaries and grand thefts, we conclude execution of the three concurrent 25-year-to-life sentences the court imposed for Jennings's grand theft convictions should have been stayed under section 654, and the judgment must be modified accordingly. (*People v. Rodriguez*, *supra*, 47 Cal.4th at p. 507.)

We reject the Attorney General's claim that the court properly did not stay execution of the 25-year-to-life sentence it imposed for Jennings's conviction of unlawfully taking or driving of a vehicle. The Attorney General maintains that Jennings harbored a separate criminal intent in taking Winter's Audi because his act of taking the car was "essentially . . . an afterthought." According to the Attorney General, the trial

25

record shows that Jennings's intent was to "steal whatever valuables he could find inside Winter's house," he did steal cash and valuables he found inside the house and "then went into the garage afterwards, drove the Audi away, removed a tire from the Audi, and abandoned it later that day." These assertions are unavailing. In *People v. Bauer* (1969) 1 Cal.3d 368, the California Supreme Court rejected a similar claim. In that case, the defendant and an accomplice gained entrance into the home of three elderly women by pretending to be gas company employees who wished to check the stove, tied the women up, ransacked the home, carried personal property belonging to the victims to the garage, and drove away in a car belonging to one of the victims. (*Id*. at p. 372.) A jury convicted the defendant of first degree burglary, first degree robbery, grand theft, and automobile theft. (*Id*. at p. 371.) On appeal, the Attorney General claimed the separate sentences imposed for the robbery and car theft convictions should be upheld because the robbery was complete before the car theft began and the theft of the automobile was an afterthought. (*Id*. at p. 377.) The *Bauer* court rejected this claim, explaining that "[t]he fact that one crime is technically complete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction. [Citations.] And *the fact that one of the crimes may have been an afterthought does not permit multiple punishment where there is an indivisible transaction*." (*Ibid*., italics added.)

Here, like the theft of the automobile in *Bauer*, Jennings's act of unlawfully taking Winter's Audi, even if it was an "afterthought" after he ransacked her home and stole personal property he found inside the home, was part of an indivisible course of conduct

26

for purposes of section 654.  Thus, the 25-year-to-life sentence the court imposed for Jennings's taking-of-a-vehicle conviction should have been stayed under section 654, and the judgment must be modified accordingly.  (*Bauer*, *supra*, 1 Cal.3d at p. 377.)

III.  *CLAIM OF INSTRUCTIONAL ERROR* (*CALCRIM NO. 376*)

Last, Jennings contends the court violated his Sixth Amendment right to have each element of the charged offenses proven beyond a reasonable doubt, as well as his Fourteenth Amendment right to due process, when it instructed the jury in SCD236226 with CALCRIM No. 376 regarding the possession of recently stolen property as evidence of a crime.  We reject this contention.

A.  *Background*

The court instructed the jury with the following version of CALCRIM No. 376:

> "If you conclude the defendant knew he possessed property and you conclude that the property had, in fact, been recently stolen, you may not convict the defendant of burglary, theft, or unlawful taking or driving of a vehicle based on those facts alone.  However, if you find the supporting state evidence tends to prove his guilt, you may conclude that the evidence is sufficient to prove he committed burglary or theft and/or unlawful taking or driving of a vehicle.  [¶] *The supporting evidence need only be slight* and need not be enough by itself to prove guilt.  You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of burglary or theft or unlawful taking or driving of a vehicle.  [¶] Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion the defendant is guilty of that crime has been *proved beyond a reasonable doubt*."  (Italics added.)

B.  *Analysis*

Jennings contends that the portion of CALCRIM No. 376 stating "[t]he supporting evidence need only be slight" lowered the prosecution's burden of proof and deprived him

27

of his constitutional rights to due process of law and to have each element of a charged offense proven beyond a reasonable doubt. Specifically, he asserts that, "[b]y using the term 'slight,' [CALCRIM No. 376] manifestly tells the jury that guilt may be inferred on the basis of evidence which does not rise to the standard of proof beyond a reasonable doubt," and it "allowed the jury in this case to convict [him] of burglary, grand theft, and taking the car, when his possession of the stolen property was combined with only 'slight' corroborating evidence." We disagree.

CALCRIM 376, like its predecessor CALJIC No. 2.15, "is an instruction generally favorable to defendants; its purpose is to emphasize that possession of stolen property, alone, is insufficient to sustain a conviction for a theft-related crime. [Citations.] In the presence of at least some corroborating evidence, it permits—but does not require—jurors to infer from possession of stolen property guilt of a related offense such as robbery or burglary." (*People v. Gamache* (2010) 48 Cal.4th 347, 375 (*Gamache*).)[7]

---

[7] In *Gamache*, the trial court instructed the jury with the following version of CALJIC No. 2.15, covering the inferences to be drawn from possession of recently stolen property, which had been modified to include the various crimes with which the three codefendants were charged in that case: "If you find that a defendant was in conscious possession of recently stolen property, the fact of such possession is not by itself sufficient to permit an inference that the defendants are guilty of the crime of murder, robbery, burglary, and kidnapping for robbery. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, *this corroborating evidence need only be slight*, and need not by itself be sufficient to warrant an inference of guilt. [¶] As corroboration, you may consider the attributes of possession—time, place, and manner, that the defendant had an opportunity to commit the crime charged; the defendant's conduct; his false or contradictory statements, if any; and/or other statements that he or she may have made with reference to [the] property; or a false account of how he or she acquired possession of the stolen property; or any other

28

Also, the California Supreme Court has previously held CALJIC No. 2.15 "does not establish an unconstitutional mandatory presumption in favor of guilt [citation] or otherwise *shift or lower the prosecution's burden of establishing guilt beyond a reasonable doubt* [citations]." (*Gamache*, *supra*, 48 Cal.4th at p. 376, italics added.) On this point, the relevant language in CALCRIM 376 and CALJIC No. 2.15 is "linguistically synonymous" and "constitutionally indistinguishable." (*People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1036.) We are bound to follow and apply the foregoing Supreme Court CALJIC No. 2.15 holdings to CALCRIM 376 (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and, thus, we must reject Jennings's contentions since they are contrary to them.

_____

evidence which tends to connect the defendant with the crime charged." (*Gamache*, *supra*, 48 Cal.4th at p. 374, fn. 12, italics added.)

DISPOSITION

The judgment in SCD236226 is modified to stay under Penal Code section 654 the execution of the 25-year-to-life sentences imposed for Jennings's three grand theft convictions (counts 3, 5 & 7) and his conviction of unlawfully taking or driving of a vehicle (count 2).  As so modified, the judgment is affirmed.  The trial court is directed to amend the abstract of judgment in that case to reflect this modification of the judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.  The judgment in SDC229068 is affirmed.

NARES, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

30