[No. A106256. First Dist., Div. Three. July 28, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ROBERT MIDDLETON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B and C of the Discussion.

## COUNSEL

Kieran D. C. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Moona Nandi and Sharon R. Wooden, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POLLAK, J.**—Pursuant to a negotiated disposition, defendant Michael Robert Middleton pleaded no contest to possession of cocaine base with a personal arming enhancement, possession of a firearm by a convicted felon, and receiving stolen property with a personal arming enhancement. He appeals the court's denial of his motion to suppress evidence. In the published portion of this opinion, we address his contention that police officers' knowledge that an individual is on parole is not sufficient to inform the officers that the individual is subject to a search condition and is thus insufficient to justify a warrantless search of that person's premises. We find no merit in that or in any other of his contentions, and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are based on undisputed testimony given at the hearing on the motion to suppress. On November 11, 2002, at 11:30 p.m., Fairfield

Officers Steven Trojanowski, Jennifer Clifton, Ross Hawkins and Joshua Cohen were conducting a security check at the Travel Lodge Motel on Auto Mall Parkway in Fairfield. Trojanowski testified that he and his fellow officers regularly patrolled the motel because the surrounding vicinity is considered a high drug area. As they were descending stairs from the second floor, the officers saw a Ms. Barker coming out of a first floor room and detected a strong odor of marijuana. From their vantage point the officers were unable to determine whether Barker had come out of room 111 or the adjacent room 126.

Trojanowski stopped and questioned Barker who acknowledged that she had come from room 126 where people had been smoking marijuana. A few minutes later, Melissa Biesecker emerged from room 126. Biesecker also admitted that she had been smoking marijuana there, but she initially gave Clifton a false name. After determining that the name given by Biesecker was false, Clifton placed Biesecker under arrest for providing false information to a police officer. Barker was arrested on a separate offense and both women were placed in nearby patrol cars.

The four officers then attempted to contact the occupants of room 126. Trojanowski first knocked softly on the door and then, receiving no response, knocked harder while announcing the presence of the Fairfield Police Department. Officers saw a man peek out of the curtain through the side window, look at the officers and abruptly close the drapes. They then heard "scurrying around inside the room, things slamming, people running." As the sounds in room 126 fell silent, the officers heard movement next door in room 111. The officers deduced that the occupants of room 126 had moved to room 111 through an adjoining door which they knew was there.

While the other officers remained outside of the rooms, Trojanowski went to the motel manager's office to determine the registrant of room 111. He learned that the room was registered to Maurice Hurth. The police dispatcher informed Trojanowski that Hurth was on the active parolee list. Trojanowski decided to execute a parole search of room 111. He obtained a passkey and bolt cutters from the motel manager and returned to room 111. By this time, Officer Darin Moody, Sergeant Shipp and Sergeant Mihelich had arrived on the scene. Trojanowski knocked on the door of room 111 but received no response. He knocked more loudly a second time and announced that he was from the Fairfield Police Department. When no one responded, Trojanowski used the passkey to unlock the door and the bolt cutters to free the safety

latch. Trojanowski, Clifton, and five other officers entered the room with their weapons drawn. Five people were found inside room 111, including defendant who was standing in the bathroom with his hands and arms dripping wet. All the occupants were pat searched, handcuffed, led outside and seated on the ground.

While the officers were in the midst of securing and moving the subjects outside, Officer Moody, standing in the open doorway of room 111, saw the handle of a handgun protruding from behind an entertainment center inside the room. When the suspects were out of the room, Moody moved the entertainment center and pointed out the gun to Clifton, the investigating officer. Clifton went back outside and announced to the subjects "that they were being detained on investigation of a handgun." Defendant spontaneously exclaimed, "How can you put that gun on me when you found it back behind there." The officers, still unable to locate Hurth and concerned for officer safety, began to discuss the possibility that Hurth was in room 126. Defendant volunteered that Hurth was not in room 126 and said that the officers could use his card key to look into the room to check. As some officers entered room 126, defendant told Clifton that all items found there belonged to him and he did not want anyone else to get in trouble for what might be found.

Upon entering room 126, Officer Cohen saw seven Ziploc bags of marijuana on the floor and a small scale on the nightstand. In the bathroom, Cohen saw four small bags of marijuana and three small cocaine rocks floating in the toilet. In a box on the shelf above the toilet, Cohen discovered two more small bags of marijuana. A suitcase left beneath the shelf contained another scale, 18 cell phones, two semiautomatic pistols, and ammunition. Trojanowski also found $1,000 in small bills. Before defendant was transported to the police station, he asked Trojanowski to retrieve his sweat suit from the motel room. After defendant identified his sweat suit, Trojanowski searched the pockets and found a large wad of cash, credit cards, and identification. Both the credit cards and identification were in another person's name.

Defendant was charged with possession of cocaine base for sale (Health & Saf. Code, § 11351.5) with a personal arming enhancement (Pen. Code,[1] § 12022, subd. (c); count I); possession of marijuana for sale (Health & Saf. Code, § 11359; count II); possession of a firearm by a convicted felon (§ 12021, subd. (a)(1); count III); receiving stolen property (§ 496, subd. (a))

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

with a personal arming enhancement (§ 12022, subd. (c); count IV); and destruction of evidence (§ 135; count V). Defendant entered a plea of not guilty and moved to suppress the evidence pursuant to section 1538.5. After a pretrial hearing, the motion was denied. Defendant subsequently pleaded no contest to counts I, III, and IV in exchange for a four-year maximum prison term and dismissal of the remaining charges and charges in a separate pending case. Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends that his motion to suppress the evidence found in the two motel rooms was erroneously denied. He argues that the initial search of room 111 was not justified as a parole search because the officers did not verify that the terms of Hurth's parole included a search condition,[2] that the facts known to the officers when they entered room 111 did not justify his detention, and that his consent to search room 126 therefore was involuntary because it resulted from an unlawful detention. We find no merit in any of these contentions.

### A. *Validity of the Parole Search of Room 111*

In reviewing the denial of a motion to suppress, an appellate court defers to the trial court's express or implied findings of fact that are supported by substantial evidence, but must independently determine the relevant legal principles and apply those principles to the trial court's findings of facts to determine whether the search was constitutionally reasonable. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729]; *People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961]; *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507

---

[2] While the trial court expressed concerns over defendant's standing to challenge the search of room 111, the court proceeded to rule under the assumption that defendant did have standing. While the burden is generally on the defendant to establish a constitutionally reasonable expectation of privacy regarding the location searched (*Rakas v. Illinois* (1978) 439 U.S. 128, 142–144 [58 L.Ed.2d 387, 99 S.Ct. 421]), the prosecution may lose the opportunity to challenge a defendant's standing on appeal "when it has acquiesced in contrary findings by [the trial court] or when it has failed to raise such questions in a timely fashion during the litigation" (*Steagald v. United States* (1981) 451 U.S. 204, 209 [68 L.Ed.2d 38, 101 S.Ct. 1642]; see *Rodriguez v. Superior Court* (1988) 199 Cal.App.3d 1453, 1461 [245 Cal.Rptr. 617]). Before the hearing in the trial court, the prosecutor did not brief the standing issue, and only when the issue was raised by the court did the prosecutor orally argue against defendant's standing, without citing any authority. On appeal, the Attorney General references the trial court's concern over the issue but again fails to attack defendant's standing, demonstrating acquiescence in the trial court's implied finding that defendant does have standing to raise the issue.

P.2d 621].) "[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court." (*People v. Lawler, supra,* at p. 160.) If factual findings are unclear, the appellate court must infer "a finding of fact favorable to the prevailing party on each ground or theory underlying the motion." (*People v. Manning* (1973) 33 Cal.App.3d 586, 601–602 [109 Cal.Rptr. 531].) However, if the undisputed facts establish that the search or seizure was constitutionally unreasonable as a matter of law, the reviewing court is not bound by the lower court's ruling. (*People v. Medina* (1972) 26 Cal.App.3d 809, 815 [103 Cal.Rptr. 337].)

■    The Fourth Amendment provides citizens protection against arbitrary and unreasonable searches and seizures in their residences, which have been held to include hotel rooms in which they are registered. (*People v. Williams* (1988) 45 Cal.3d 1268, 1297 [248 Cal.Rptr. 834, 756 P.2d 221].) A search of a residence conducted without a warrant is presumptively unreasonable unless it falls within one of " 'a few specifically established and well-delineated exceptions.' " (*People v. Sanders* (2003) 31 Cal.4th 318, 337 [2 Cal.Rptr.3d 630, 73 P.3d 496] (conc. opn. of Kennard, J.); see *Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 88 S.Ct. 507]; *Flippo v. West Virginia* (1999) 528 U.S. 11, 13 [145 L.Ed.2d 16, 120 S.Ct. 7].) As the Fourth Amendment has been interpreted by the California Supreme Court, police officers may make a warrantless search of the residence of a parolee subject to a valid search condition "despite the absence of particularized suspicion" as long as the search is not conducted for "arbitrary, capricious or harassing" purposes. (*People v. Reyes* (1998) 19 Cal.4th 743, 752–753 [80 Cal.Rptr.2d 734, 968 P.2d 445].)[3] However, the warrantless search of a residence cannot be justified as a parole search if the police do not know of the suspect's parole status when they conduct the search. (*People v. Sanders, supra,* 31 Cal.4th at p. 332; *In re Martinez* (1970) 1 Cal.3d 641, 646 [83 Cal.Rptr. 382, 463 P.2d 734].) The "reasoning in *Reyes* does not apply if the officer is unaware that the suspect is on parole and subject to a search condition. Despite the parolee's diminished expectation of privacy, such a search cannot be justified as a parole search, because the officer is not acting pursuant to the conditions of parole." (*People v. Sanders, supra,* at p. 333.)

■    Here the officers did not enter room 111 until they had determined that the room was registered to Maurice Hurth, an active parolee. The trial

---

[3] Although the Ninth Circuit Court of Appeals has rejected the *Reyes* standard (*United States v. Crawford* (9th Cir. 2003) 323 F.3d 700, 716), this court is bound to follow the rulings of the California Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]).

court concluded that the prosecution had met its burden of justifying the warrantless search based on the officers' knowledge of Hurth's status as a parolee. Defendant argues that the prosecution's showing was inadequate because it failed to establish that the officers, though aware of Hurth's parole status, knew that Hurth had consented to a search of his residence as a condition of parole. But "a warrantless search condition is a reasonable term in any parole of a convicted felon from state prison." (*People v. Burgener* (1986) 41 Cal.3d 505, 532 [224 Cal.Rptr. 112, 714 P.2d 1251], disapproved on other grounds in *People v. Reyes, supra,* 19 Cal.4th at p. 756.) It was long ago recognized that "every grant of parole included an implied search condition, and an officer's knowledge of parole status was equivalent to knowledge of a parole search condition." (*In re Tyrell J.* (1994) 8 Cal.4th 68, 94 [32 Cal.Rptr.2d 33, 876 P.2d 519] (dis. opn. of Kennard, J.); see *People v. Sanders, supra,* 31 Cal.4th at p. 328.) A search condition for every parolee is now expressly required by statute. Section 3067, subdivision (a) requires an inmate to agree to permit law enforcement to perform warrantless searches, regardless of cause, as a mandatory condition of parole.[4] Section 3060.5 requires the parole authority to revoke the parole of any eligible inmate who refuses to sign a parole agreement which must include the mandatory parole search condition.[5]

Defendant points to section 3067, subdivision (b) to suggest that an inmate may be paroled without expressly agreeing to a parole search condition.[6] While this provision may not be a model of statutory clarity, read together with subdivision (a) it can be understood to mean only that inmates who are otherwise eligible for parole yet refuse to agree to the mandatory search condition will remain imprisoned while losing their accumulated worktime credits on a daily basis until either (1) the inmate agrees to the search condition and is otherwise eligible for parole, or (2) has lost all worktime credits and is eligible for release after having served the balance of his/her

---

[4] Section 3067, subdivision (a) reads: "Any inmate who is eligible for release on parole pursuant to this chapter shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause."

[5] Section 3060.5 reads in part: "Notwithstanding any other provision of law, the parole authority shall revoke the parole of any prisoner who refuses to sign a parole agreement setting forth the general and any special conditions applicable to the parole . . . and shall order the prisoner returned to prison."

[6] Section 3067, subdivision (b) reads: "Any inmate who does not comply with the provision of subdivision (a) shall lose worktime credit earned pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 on a day-for-day basis and shall not be released until he or she *either* complies with the provision of subdivision (a) *or* has no remaining worktime credit, whichever occurs earlier." (Italics added.)

sentence. Support for this interpretation of section 3067, subdivision (b) can be found in the final legislative analysis of the provision filed concurrently with the passage of the statute in 1996. "An inmate who refuses to agree to warrantless search shall not be released until he agrees or has served his/her entire sentence."[7] (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2284 (1995–1996 Reg. Sess.) as amended Aug. 26, 1996, p. 1.)

   ■   Defendant's final point that section 3067, subdivision (c) limits the applicability of section 3067 to inmates whose offenses were committed on or after January 1, 1997 (and there is no evidence that the officers here knew when Hurth committed the offense for which he was on parole), is equally unavailing. Whatever differences there may be between the provisions of section 3067 and the administrative regulations that apply to those on parole for offenses committed before 1997,[8] both contemplate that all parolees shall be subject to a search condition. Moreover, section 3060.5, which provides that "the parole authority shall revoke the parole of any prisoner who refuses to sign a parole agreement setting forth the general and any special conditions applicable to the parole," applies regardless of the date on which the parolee's offenses were committed. Thus, the officers' awareness that Hurth was a parolee was sufficient to inform them of their right to conduct a parole search of his motel room and justified the search of room 111.[9]

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[7] The legislative analysis continued: "This bill places public safety before all other concerns when deciding whether or not to release a state prison inmate before he/she has served his/her full sentence. This bill ends the inconsistency between the search conditions of probationers and parolees and gives law enforcement officers a bright line rule to follow for all convicted felons who are being supervised by the state criminal justice system." (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2284 (1995–1996 Reg. Sess.) as amended Aug. 26, 1996, p. 3.)

[8] California Code of Regulations, title 15, section 2356 reads: "Prior to release on parole, the prisoner shall be given the notice and conditions of parole by department staff. . . ." California Code of Regulations, title 15, section 2511, subdivision (b)(4) reads: "You and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections or any law enforcement officer."

[9] Since the entry into room 111 was justified by Hurth's parole search condition, we need not address whether exigent circumstances were sufficient to justify the officers' entry to prevent the possible destruction of evidence.

*See footnote, *ante,* page 732.

## Disposition

The judgment is affirmed.

Corrigan, Acting P. J., and Parrilli, J., concurred.