Filed 12/3/13  P. v. Sanders CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055814 |
| v. | (Super.Ct.No. FSB1103612) |
| BJ SANDERS III, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendant and Appellant. | [CHANGE IN JUDGMENT] |

THE COURT:

The petition for rehearing filed by plaintiff and respondent The People of the State of California is denied.  It is ordered that the opinion filed herein on November 5, 2013, be modified as follows:

1.  On page 1, in the first paragraph beginning with "APPEAL from the Superior Court," the last sentence beginning with "Affirmed in part . . ." is stricken in its entirety and replaced with "Affirmed."

1

2. On Page 14, in the first full paragraph, the last sentence beginning with "Given the fact that Judge Peel decided" is stricken in its entirety and replaced with the following sentence:

"Given the fact that Judge Peel decided to allow another judge to preside over the trial on defendant's priors, it is arguable that he should have also allowed another judge to preside over sentencing."

3. On page 15, the first full paragraph beginning with "Judge Peel only learned" is stricken in its entirety and replaced with the following:

"Judge Peel only learned of the prior case while the jury was deliberating, before the trial on defendant's priors and his sentencing hearing. To the extent the prior case had any effect on the current case, it would have been at the trial on defendant's priors and at his sentencing on those priors. Thus, Judge Peel disqualified himself from the trial on the defendant's priors, but not on defendant's sentencing. The People argue that defendant is precluded from challenging Judge Peel's decision to conduct the sentencing hearing because he failed to comply with Code of Civil Procedure section 170.3, subdivision (d). That section, in relevant part, provides: "The determination of the question of the disqualification of a judge *is not an appealable order* and *may be reviewed only by a writ of mandate* from the appropriate court of appeal sought only by the parties to the proceeding. The petition for writ shall be filed and served within 10 days after service of written notice of entry of the court's order determining the question of disqualification." (Code Civ. Proc., § 170.3, subd. (d), italics added.) We agree. Having failed to comply with Code of Civil Procedure section 170.3, subdivision (d), we conclude that defendant has waived the issue of disqualification with respect to Judge Peel conducting his sentencing hearing.

"Nonetheless, even if we were to reach the merits of the issue (i.e., to address a claim of ineffective assistance of counsel), we conclude that defendant would fare no better. Judge Peel accepted the recommendation of the Probation Officer in sentencing defendant. More specifically, regarding defendant's sentence on his priors, Penal Code section 667.5, subdivision (b), in relevant part, provides that "where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term

2

imposed . . . ." That is precisely what defendant received, one year, consecutive, for each prior. It is not reasonably probable that he would have received a better result with a different judge."

4. On page 16, the first paragraph under section IV. beginning with the words "For the foregoing reasons," is stricken in its entirety and replaced with the following:

"The judgment is affirmed."

Except for the above modification, the opinion remains unchanged. There is a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

MCKINSTER
J.

MILLER
J.

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055814 |
| v. | (Super.Ct.No. FSB1103612) |
| BJ SANDERS III, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Richard V. Peel, Bridgid M. McCann, and Annemarie Pace, Judges.[1]  Affirmed in part, reversed in part, and remanded with directions.

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[1] Judge McCann ruled on defendant's motion to suppress, Judge Peel presided over defendant's jury trial, and Judge Pace presided over the trial on defendant's priors.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and James D. Dutton and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial defendant BJ Sanders III was convicted of possession of marijuana (Health & Saf. Code, § 11359, count 1) and possession of a firearm by a felon (Pen. Code,[2] former § 12021, subd. (a)(1), count 2). In a bifurcated proceeding the trial court found true the allegations that defendant suffered three prison priors. Defendant was sentenced to 199 days in county jail on count 1, for which he received credit for time served. On count 2 he was sentenced to three years in state prison, plus three consecutive years for the prior prison terms, for a total sentence of six years. Defendant appeals, contending the trial court erred in denying his motion to suppress and the trial judge erred in failing to disqualify himself upon learning that he was the prosecutor on one of defendant's prior cases.

## I. FACTS

On August 7, 2011, San Bernardino Police Officer Jason Heilman and his partner, Officer Byron Clark, conducted a traffic stop of defendant's vehicle in the parking lot of an apartment complex. Defendant told the officer that he was living with his girlfriend in an apartment at the complex. Officer Heilman obtained a key to the apartment, knocked, opened the door and announced his presence. A search of the residence produced a

---

[2] Penal Code, former section 12021, subdivision (a)(1) was repealed operative January 1, 2012, but its provisions were reenacted without substantive change as Penal Code section 29800, subdivision (a)(1).

2

loaded firearm, marijuana and a digital scale. Defendant was interviewed and admitted the marijuana and firearm belonged to him.

## II. MOTION TO SUPPRESS

Defendant contends the trial court erred when it denied his motion to suppress evidence. He claims that (1) the search, which was pursuant to a parole search term, was arbitrary, capricious and unduly oppressive, and (2) there was insufficient evidence to establish that the officers were aware that defendant's parole terms subjected him to a suspicionless search.

### A. Further Background Information

Prior to trial, defendant moved to suppress evidence pursuant to Penal Code section 1538.5. At the hearing, Officer Heilman testified that he conducted a traffic stop of defendant's car at an apartment complex for failure to use a turn signal. Defendant identified himself and stated that he was on parole. He also stated that he lived in the apartment complex. Officer Heilman verified defendant's parole status and conducted a search of the vehicle and the apartment. The officer called for assistance to conduct a parole compliance check of the apartment while his partner stayed with defendant and the vehicle.

Upon entering the apartment, defendant's girlfriend, Giovanna Funches, identified the bedroom that belonged to her and defendant. Officer Heilman discovered marijuana, a digital scale, and a loaded firearm in the closet of the bedroom. Marijuana was also found in the kitchen on top of the refrigerator.

3

On cross-examination, Officer Heilman testified that Funches was approximately five feet from the door when he opened it and stated he was conducting a parole search. Police went through all the rooms and drawers and checked under the bed and mattress. The search of the bedroom took 15 to 20 minutes. The initial stop occurred after Officer Heilman observed defendant turning from Date Street into the parking lot of the apartment complex. There was a male passenger with defendant. Officer Heilman's partner dealt with the passenger. It took one or two minutes to run the status of both defendant and his passenger through the system. It took approximately 10 minutes to search defendant's vehicle. During this time defendant was handcuffed. Nothing illegal was discovered in the vehicle. It took an additional five to 10 minutes to wait for backup so that Officer Heilman could conduct a parole compliance check on defendant's residence. Defendant was placed in the back of the patrol car, while Officer Heilman and two other officers searched the unit. From the time of the initial stop to the time of approaching the apartment was "15, 20 minutes."

Using a key, Officer Heilman entered the apartment. He saw marijuana on top of the refrigerator in plain view upon entering. Approximately two to five minutes into the initial search of the bedroom, the officers found marijuana and a firearm. The overall search of the apartment took 20 to 30 minutes. Normally, it takes approximately five minutes to issue a citation for a traffic stop.

**B. Standard of Review**

When a trial court rules on a motion to suppress evidence, it "'"(1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the

4

former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] . . . [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review." [Citation.]' [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1114, 1140.)

### C. Search of Defendant's Home

Defendant argues that the "parole search of his home was arbitrary, capricious, and conducted in an oppressive manner because the detention was unreasonably prolonged; [he] was left handcuffed in a patrol car outside; officers seized his keys without giving him an opportunity to consent; and they opened his front door without giving the residents any opportunity to refuse or consent to the officer[']s admittance." He challenges being handcuffed in the back of the patrol car while Officer Heilman searched the apartment when the officer "had no reason to believe that [defendant] had done anything wrong except fail to use his turn signal." Further, he challenges the officer's announcement of his presence while simultaneously entering the apartment. To the extent defendant failed to challenge the taking of his keys and the lack of knocking and announcing the officer's presence prior to entering the apartment at the trial level in his suppression motion, these issues are forfeited. (*People v. Williams* (1999) 20 Cal.4th 119, 123, 130.) Moreover, the contentions lack merit.

5

The United States Supreme Court has concluded that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." (*Samson v. California* (2006) 547 U.S. 843, 857.) "Where the search is for a proper purpose, . . . even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy 'society is "prepared to recognize as legitimate."'" [Citations.]" (*People v. Reyes* (1998) 19 Cal.4th 743, 754 (*Reyes*).)  However, this "does not mean parolees have no protection." (*Id.* at p. 753.)  Instead, "'a parole search could become constitutionally "unreasonable" if made too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer.' [Citations.]" (*Id.* at pp. 753-754.)

"The validity of a search does not turn on 'the actual motivations of individual officers.' [Citation.]  But whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted." (*People v. Sanders* (2003) 31 Cal.4th 318, 334.)  "Where the motivation is unrelated to rehabilitative and reformative purposes or legitimate law enforcement purposes, the search is 'arbitrary.'  For example, had the officer been motivated by personal animosity toward [defendant] or his family, execution of the 'consent search term' would be 'arbitrary.'" (*In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1004.)

Here, the search of defendant's apartment was not unreasonable.  The officers knew about defendant's parole status, which authorized them to detain and search him pursuant to his parole search condition. (*Reyes*, *supra*, 19 Cal.4th at p. 754.)  The search

6

was not unduly prolonged, it was not performed at an unreasonable time, and there is no evidence it was an attempt to harass defendant. The fact that the officers handcuffed defendant throughout much of the encounter is easily explained, given the presence of defendant and his passenger and the need for one officer to watch both men. Upon learning of defendant's parole status, and that he lived in the apartment complex where he was stopped, the officers were legally permitted to search defendant's apartment in addition to his vehicle and person.

Notwithstanding the above, defendant takes issue with Officer Heilman taking the key to the apartment, using it and entering without providing any resident the opportunity to refuse or consent. There are four main reasons for the knock-notice rule in California: "'"(1) The protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises . . . [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder.'" [Citations.]" (*People v. Hoag* (2000) 83 Cal.App.4th 1198, 1203.) The individual's privacy interest has many aspects. "First, [the knock-notice rule] protects the homeowner from the outrage of having his 'castle' suddenly and violently broken into. [Citations.] . . . [¶] Second, the rule may prevent embarrassing circumstances resulting from the unexpected exposure of private activities. [Citations.]" (*United States v. Bustamante-Gamez* (9th Cir.1973) 488 F.2d 4, 11-12.) And finally, because officers must wait to be refused admittance, the rule gives the homeowner an opportunity to consent to entry.

7

Here, the record shows that the officers used defendant's key to enter the apartment, and at the time of opening the door announced, "Police, parole search." However, the transcript of the hearing on the motion to suppress is void of any inquiry into whether the officers knocked on the door before entering the apartment. Defendant did not voice any objection to the use of his key in his presence, and he "may not vicariously challenge the alleged violation of another's interest." (*People v. Hoag*, *supra*, 83 Cal.App.4th at p. 1203.) Moreover, the exclusionary rule does not apply to evidence seized pursuant to a warrant despite a violation of knock-notice law. (*Hudson v. Michigan* (2006) 547 U.S. 586, 599.) While there was no warrant in this case, the same reasoning applies during the execution of a search pursuant to a parolee's search term. Nonetheless, defendant faults his trial counsel for failing to raise the knock-notice violation. Assuming, without deciding, counsel's deficiency, we conclude that defendant is unable to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.) According to the record before this court, Officer Heilman testified at trial that he did knock and announced himself as law enforcement. The record is silent on why defense counsel did not raise the issue below. If the record on appeal ""'sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected,'" and the "claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza*

8

*Tello* (1997) 15 Cal.4th 264, 266-267.) Here the conduct of defense counsel is subject to a satisfactory explanation, i.e., defense counsel knew the officer had knocked before entering, and thus, there was no basis to raise the issue. (*People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091 [defense counsel "is not required to make futile motions or to indulge in idle acts to appear competent"].)

### D. Defendant's Status as a Parolee

Next, defendant contends the "evidence was insufficient to establish that Heilman was aware that [defendant's] parole agreement contained a search term." This issue has been addressed, and rejected, by our colleagues in Division Three of the First District. (*People v. Middleton* (2005) 131 Cal.App.4th 732, 739 (*Middleton*).) Although defendant invites us to "reject the analysis in *Middleton* because it is less persuasive than the reasoning put forth in the federal cases[,]"we decline the invitation and adopt the holding in *Middleton*. (*People v. Schmitz* (2012) 55 Cal.4th 909, 923 [officer's knowledge of an individual's parole status is equivalent to knowledge of a search condition].)

"'[A] warrantless search condition is a reasonable term in any parole of a convicted felon from state prison.' [Citations.] It was long ago recognized that 'every grant of parole included an implied search condition, and an officer's knowledge of parole status was equivalent to knowledge of a parole search condition.' [Citations.] A search condition for every parolee is now expressly required by statute. [Penal Code]

9

[s]ection 3067, [former] subdivision (a)[3] requires an inmate to agree to permit law enforcement to perform warrantless searches, regardless of cause, as a mandatory condition of parole.  [Penal Code, former] [s]ection 3060.5[4] requires the parole authority to revoke the parole of any eligible inmate who refuses to sign a parole agreement which must include the mandatory parole search condition.

"Defendant points to [Penal Code] section 3067, [former] subdivision (b) to suggest that an inmate may be paroled without expressly agreeing to a parole search condition.[]  While this provision may not be a model of statutory clarity, read together with [former] subdivision (a) it can be understood to mean only that inmates who are otherwise eligible for parole yet refuse to agree to the mandatory search condition will remain imprisoned while losing their accumulated worktime credits on a daily basis until either (1) the inmate agrees to the search condition and is otherwise eligible for parole, or (2) has lost all worktime credits and is eligible for release after having served the balance of his/her sentence.  Support for this interpretation of [Penal Code] section 3067, [former] subdivision (b) can be found in the final legislative analysis of the provision filed concurrently with the passage of the statute in 1996.  'An inmate who refuses to agree to warrantless search shall not be released until he agrees or has served his/her entire

---

**3**  Penal Code section 3067, subdivisions (a) and (b), were amended in June 2012. (Stats. 2012, ch. 43, § 49, eff. June 27, 2012.)

**4**  Penal Code section 3060.5 was amended in June 2012.  (Stats. 2012, ch. 43, § 45, eff. June 27, 2012.)

10

sentence.' (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2284 (1995-1996 Reg. Sess.) as amended Aug. 26, 1996, p. 1.)

"Defendant's [further] point that [Penal Code] section 3067, subdivision (c) limits the applicability of [Penal Code] section 3067 to inmates whose offenses were committed on or after January 1, 1997 (and there is no evidence that the officers here knew when [defendant] committed the offense for which he was on parole), is equally unavailing.[5] Whatever differences there may be between the provisions of [Penal Code] section 3067 and the administrative regulations that apply to those on parole for offenses committed before 1997, both contemplate that all parolees shall be subject to a search condition. Moreover, [Penal Code, former] section 3060.5, which provides that 'the parole authority shall revoke the parole of any prisoner who refuses to sign a parole agreement setting forth the general and any special conditions applicable to the parole,' applies regardless of the date on which the parolee's offenses were committed." (*Middleton*, *supra*, 131 Cal.App.4th at pp. 739-740, fns. omitted.)

Thus, Officer Heilman's awareness that defendant was a parolee was sufficient to inform the officers of their right to conduct a parole search of his apartment and justified the search of it.

---

[5] While defendant contends that "the record does not support an inference that [he] was necessarily on parole," Officer Heilman testified that upon asking defendant if he was on probation or parole, defendant stated he was on parole. Moreover, the information alleged that defendant suffered three prior convictions (2005, 2007, and 2008) for which prison terms were served. Further, defendant faults the trial judge for failing to disqualify himself upon acknowledging that he acted as a deputy district attorney in a prior case against defendant.

## III.  TRIAL JUDGE'S NEED TO DISQUALIFY HIMSELF

On October 25, 2011, during jury deliberation, the Judge Peel became aware that he had acted as a deputy district attorney in a prior case against defendant.[6]  The prior case involved one of defendant's prior convictions alleged pursuant to Penal Code section 667.5.  As a result, Judge Peel disqualified himself from hearing the Penal Code section 667.5 allegations.  However, he continued to preside over the trial on the instant charges, entering the verdict, discharging the jury, and sentencing defendant.  Defendant moved for a new trial, arguing that because of the conflict Judge Peel could not have any further involvement with the case, and because defendant had a right to be sentenced by the judge who presided over the trial, no other judge could sentence him either.  Thus, defendant maintained that a new trial was necessary.  Judge Peel denied the motion.  On appeal, defendant faults Judge Peel for failing to disqualify himself upon learning that he was the prosecutor on one of defendant's prior cases.

Citing *Sincavage v. Superior Court* (1996) 42 Cal.App.4th 224 (*Sincavage*), defendant contends Judge Peel "erred when [he] recused [him]self from the hearing on the prior convictions, rather than the entire proceeding."  We disagree.  In *Sincavage*, the trial judge had conducted the preliminary hearing on one of defendant's prior

---

**6**  Judge Peel stated:  "The Court in my prior career as a Deputy District Attorney did make, it appears to be a single appearance at a prepreliminary hearing conference on [defendant's] case that arose out of the Fontana district of this county.  You are correct, I do not remember [defendant] at all.  I remember absolutely nothing about the case.  It did appear I did handle and appear just one prepreliminary conference on that case.  [¶] Nevertheless, it appears that my involvement in that case is disqualifying with regard to hearing anything that is in controversy regarding that case."

12

convictions. In addition, early in the proceedings, she mistakenly thought she had only appeared at a brief hearing and had played no active role. Under the mistaken impression that she served only that limited role, the trial judge commented, "'If in fact, Mr. Sincavage, I had taken your plea, if I had prosecuted one of your cases, I would automatically recuse myself. I would not hear the case. [¶] From looking at the transcript, I merely called your case and another prosecutor and Mr. Coleman . . . from the Public Defender's Office were actually involved in the plea itself.'" (*Id*. at p. 227.) Based on this information, the defendant waived the conflict and the judge presided over defendant's trial. A different attorney represented the defendant during the sentencing hearing and moved for disqualification upon discovering that the trial judge, as the prosecutor in the prior case, had conducted the preliminary examination. The motion was denied, and on appeal, the *Sincavage* court determined that the trial judge's comment and subsequent decision not to recuse herself upon discovering that she had in fact had a more active role in the prosecution of defendant created a doubt as to her impartiality, such that, as a matter of law, she should have been disqualified under Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii). (*Sincavage*, *supra*, 42 Cal.App.4th at p. 230.)

As noted by the *Sincavage* court, while the trial judge may have been impartial in presiding over the defendant's trial on his current offenses, a person would have a legitimate cause for concern over her ability to be impartial during the trial on the prior convictions and the sentencing hearing. (*Sincavage*, *supra*, 42 Cal.App.4th at p. 231.) "Because of the timing peculiar to the instant motion, disqualification would not

13

invalidate the judgment of conviction of the current offenses. Under [Code of Civil Procedure] section 170.3, subdivision (b)(4), only proceedings after the grounds for disqualification were discovered would be affected." (*Sincavage*, *supra*, 42 Cal.App.4th at p. 231.)

The facts before this court are distinguishable from the facts in the *Sincavage* case. Here, Judge Peel did not have an active role in the prosecution of defendant on his prior conviction. Rather, he appeared one time at a conference hearing before the preliminary hearing. Thus, disqualification from the entire case was not required. However, disqualification as to the sentencing is, as the People acknowledge, "admittedly a closer call." On the one hand, disqualification is only required where the judge served as an attorney for one of the parties in another proceeding "involving the same issues." (Code Civ. Proc. § 170.1, subd. (a)(2)(A).) A prepreliminary hearing conference would not have involved the same issues before the court at sentencing. However, on the other hand, Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii), states that disqualification is mandatory when a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Given the fact that Judge Peel decided to allow another judge to preside over the trial on defendant's priors, he should have also allowed another judge to preside over sentencing, since defendant's prior convictions governed the punishment for the current offense.

The trial on the current offense was untainted by any known conflict. If the court has no knowledge of a conflict, there is no reason to suspect any bias or prejudice and there is no basis for disqualification. "Judicial responsibility does not require shrinking

14

every time an advocate asserts the objective and fair judge *appears* to be biased. The duty of a judge to sit where not disqualified is equally as strong as the duty not to sit when disqualified. [Citation.]" (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 100.) Judge Peel conducted the entire guilt phase of the trial under the assumption that he had not prosecuted defendant in any prior cases. The court conducted a preliminary search into the matter and came up empty-handed, thereby confirming that no conflict existed. It is impossible for the court to be biased against defendant based on a prior encounter that the court assumed did not happen. Moreover, the record reveals no indication of bias or prejudice as Judge Peel presided over defendant's trial.

Judge Peel only learned of the prior case while the jury was deliberating, before the trial on defendant's priors and his sentencing hearing. To the extent the prior case had any effect on the current case, it would have been at the trial on defendant's priors and at his sentencing on those priors. Although Judge Peel disqualified himself from the trial on defendant's priors, out of an abundance of caution, we conclude that he should have also disqualified himself from the sentencing hearing. Given the facts before this court, the appropriate remedy is to remand the matter for resentencing only. On remand, defendant is to be sentenced by a judge other than Judge Peel.

## IV.  DISPOSITION

For the foregoing reasons, we reverse the sentence on all counts and remand the matter for resentencing by a judge other than Judge Peel.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


    HOLLENHORST
Acting P. J.

We concur:

    MCKINSTER
J.

    MILLER
J.

16